UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| BRAD NIELSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:11-CV-86 NAB |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Security, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM AND ORDER

This is an action under 42 U.S.C. § 405(g) for judicial review of the Commissioner of Social Security's final decision denying Brad Nielson's ("Nielson") application for benefits under Titles II and XVI of the Social Security Act, 42 U.S.C. § 401 *et seq.* and 42 U.S.C. § 1381 *et seq.* Nielson alleges disability due to discogenic[1] and degenerative disorders of the back and neck; ulnar neuropathy[2], chronic obstructive pulmonary disease ("COPD"), and hypertension. [Doc. 1]. Nielson filed a Brief in Support of Complaint. [Doc. 13]. The Commissioner filed a Brief in Support of Answer. [Doc. 14]. The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c).

### I.  Procedural History

On August 22, 2008, Nielson applied for a Period of Disability and Supplemental Security Income benefits, alleging an onset date of September 5, 2007. (Tr. 137, 139.) The Social Security Administration denied Nielson's claims on November 18, 2008. (Tr. 85-89.) Nielson filed a request for hearing before an administrative law judge ("ALJ") and a hearing was

---

[1] Discogenic is "denoting a disorder originating in or from an intervertebral disk." Stedman's Medical Dictionary 508 (27th ed. 2000).
[2] Ulnar neuropathy is a "disease involving the cranial nerves or the peripheral or automatic nervous system" of the "medial and larger of the two bones of the forearm." Stedman's Medical Dictionary 1211, 1905 (27th ed. 2000).

held on January 7, 2010. (Tr. 95-96, 19-79.) The ALJ issued a written opinion on February 19, 2010, affirming the denial of benefits. (Tr. 11-18.) On March 28, 2011, the Appeals Council denied Nielson's request for review. (Tr. 1-3.) Therefore, the ALJ's decision stands as the Commissioner's final decision. Nielson filed this appeal on May 16, 2011.

## II. Decision of the ALJ

The ALJ first determined that Nielson met the insured status requirements of the Social Security Act through September 30, 2013. (Tr. 13.) The ALJ found that Nielson had not engaged in substantial gainful activity since February 1, 2008, the amended alleged onset date. (Tr. 13.) The ALJ determined that Nielson had the following severe impairments: discogenic and degenerative disorders of the back and neck, ulnar neuropathy, COPD, and hypertension. (Tr. 13.) The ALJ also determined that Nielson' depression and anxiety were not severe impairments. (Tr. 13.) Next, the ALJ found that Nielson did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 14.) Then, the ALJ concluded that Nielson had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) except he can only occasionally engage in all postural activities, never reach overhead with his dominant right arm; and must avoid concentrated exposure to cold and heat and moving machinery and hazards and unprotected heights. (Tr. 14.) The ALJ determined that Nielson was unable to perform any past relevant work, but considering his age, education, work experience and RFC, there are jobs that exist in significant numbers in the national economy that he can perform. (Tr. 17.) Accordingly, the ALJ found that Nielson was not under a disability as defined in the Social Security Act from February 1, 2008 through the date of the decision. (Tr. 18.) The Court has reviewed the parties' briefs, the decision of the

ALJ, the transcript of the hearing, and the additional medical and documentary evidence in the record. The complete set of facts and arguments are presented in the parties' briefs, and are repeated here only to the extent necessary.

### III. Legal Standard

The Social Security Act defines disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 416(i)(1)(A).

The Social Security Administration uses a five-step analysis to determine whether a claimant seeking disability benefits is in fact disabled. 20 C.F.R. §§ 404.1520(a), 416.920(a). First, the claimant must not be engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(a), 416.920(a). Second, the claimant must establish that he or she has an impairment or combination of impairments that significantly limits his or her ability to perform basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). Third, the claimant must establish that his or her impairment meets or equals an impairment listed in the appendix to the applicable regulations. 20 C.F.R. §§ 404.1520(d), 416.920(d). Fourth, the claimant must establish that the impairment prevents him or her from doing past relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(e). At step five, the burden shifts to the Commissioner to establish that the claimant maintains the residual functional capacity to perform a significant number of jobs in the national economy. *Singh v. Apfel,* 222 F.3d 448, 451 (8th Cir. 2000). If the claimant satisfies all of the criteria under the five-step evaluation, the ALJ will find the claimant to be disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

It is not the job of the district court to reweigh the evidence or review the factual record de novo. *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007). This court reviews decisions of the ALJ to determine whether the decision is supported by substantial evidence in the record as a whole. *Smith v. Shalala,* 31 F.3d 715, 717 (8th Cir. 1994). Substantial evidence is less than a preponderance, but enough that a reasonable mind would find adequate support for the ALJ's decision. *Id.* Therefore, even if this court finds that there is a preponderance of evidence against the weight of the ALJ's decision, the decision must be affirmed if it is supported by substantial evidence. *Clark v. Heckler*, 733 F.2d 65, 68 (8th Cir. 1984). An administrative decision is not subject to reversal simply because some evidence may support the opposite conclusion. *Gwathney v. Chater,* 104 F.3d 1043, 1045 (8th Cir. 1997).

To determine whether the ALJ's final decision is supported by substantial evidence, the Court is required to review the administrative record as a whole and to consider:

(1) The findings of credibility made by the ALJ;
(2) The education, background, work history, and age of the claimant;
(3) The medical evidence given by the claimant's treating physicians;
(4) The subjective complaints of pain and description of the claimant's physical activity and impairment;
(5) The corroboration by third parties of the claimant's physical impairment;
(6) The testimony of vocational experts based upon prior hypothetical questions which fairly set forth the claimant's physical impairment; and
(7) The testimony of consulting physicians

*Brand v. Sec'y of Dept. of Health, Educ. & Welfare*, 623 F.2d 523, 527 (8th Cir. 1980). Additionally, an ALJ's decision must comply "with the relevant legal requirements." *Ford v. Astrue*, 518 F.3d 979, 981 (8th Cir. 2008).

## IV. Discussion

Nielson alleges two points of error. First, he asserts that the decision is not supported by substantial evidence in the record, because the ALJ failed to consider Nielson's anxiety and depression as severe impairments. Second, Nielson contends that the ALJ erred because the RFC is vague and unrelated to any medical evidence.

### A. Severe Impairment Analysis

To be considered severe, an impairment must *significantly* limit a claimant's ability to do basic work activities. *See* 20 C.F.R § 404.1520(c). "Step two [of the five-step] evaluation states that a claimant is not disabled if his impairments are not 'severe." *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007) (citing *Simmons v. Massanari,* 264 F.3d 751, 754; 20 C.F.R. § 416.920(a)(4)). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Id.* at 707. "If the impairment would have no more than a minimal effect on the claimant's ability to work, then it does not satisfy the requirement of step two." *Id.* (citing *Page v. Astrue,* 484 F.3d at 1043). "It is the claimant's burden to establish that his impairment or combination of impairments are severe. *Id.* (citing *Mittlestedt v. Apfel,* 204 F.3d 847, 852 (8th Cir.2000)). "Severity is not an onerous requirement for the claimant to meet, . . . but it is also not a toothless standard." *Id.* at 708.

At the time of the ALJ's decision on February 19, 2010, the medical evidence showed that Nielson received mental health treatment at the River City Health Clinic between August 2009 and December 2009. (Tr. 590- 597.) After the ALJ's decision, Nielson submitted additional records from River City Health Clinic dated between December 22, 2009 and April

28, 2010, including a Mental Residual Functional Capacity Questionnaire. (Tr. 773-775, 778-782.)

In cases involving the submission of supplemental evidence subsequent to the ALJ's decision, the record includes that evidence submitted after the hearing and considered by the Appeals Council." *Bergmann v. Apfel*, 207 F.3d 1065, 1068 (8th Cir. 2000) (citing *Jenkins v. Apfel*, 196 F.3d 922, 924 (8th Cir. 1999)). "In such a situation, "[a] court's role is to determine whether the ALJ's decision 'is supported by substantial evidence on the record as a whole, including the new evidence submitted after the determination was made.'" *Id.* (citing *Riley v. Shalala*, 18 F.3d 619, 622 (8th Cir. 1994)). "In practice, this requires [a] court to decide how the ALJ would have weighed the new evidence had it existed at the initial hearing." *Id.* (citing *Riley*, 18 F.3d at 622). Thus, the appropriate inquiry is not whether the Appeals Council erred, but whether the record as a whole supports the decision made by the ALJ. *Perks v. Astrue*, 687 F.3d 1086, 1093 (8th Cir. 2012) (citing *Cunningham v. Apfel*, 222 F.3d 496, 500 (8th Cir. 2000)). Therefore, the Court will consider the evidence before the ALJ and the Appeals Council to determine whether the ALJ's decision was supported by substantial evidence on the record as a whole.

At the hearing before the ALJ, Nielson testified about his depression and anxiety as follows: He was totally mentally stressed and anxiety and depression had him "all messed up." (Tr. 63-64.) The anxiety and depression affected his relationship with his fiancé and he could not be around people, because it almost gave him an anxiety attack. (Tr. 65.) He has had thoughts of suicide and racing thoughts. (Tr. 66-67.) He also testified that he has problems with focus and concentration. (Tr. 67.)

The medical evidence in the record shows that Nielson began visiting the River City Health Clinic in August 2009 complaining of depression and anxiety. (Tr. 594.) Nielson was treated by Wanda Horn, a board certified psychiatric mental health nurse practitioner. (Tr. 596.) At the initial visit in August 2009, Nielson reported that he "just can't stand being around people," he was "irritable," and he "wake[s] up shaking and puk[ing] every morning." (Tr. 594.) Ms. Horn noted that Nielson's insight and judgment were good, he was goal oriented, and he denied current auditory or visual hallucinations. (Tr. 595.) She also noted that he denied any episodes of paranoia or suicidal or homicidal ideations. (Tr. 595.) Ms. Horn determined that Nielson had anxiety disorder, not otherwise specified, and a global assessment functioning score[3] ("GAF") of 55. (Tr. 595.) She started him on a prescription for Cymbalta. (Tr. 595.)

At his next visit on September 2, 2009, Nielson reported that he hated the world, he had racing and suicidal thoughts, although he did not have a suicide plan. (Tr. 593.) His medications were changed to Seroquel and Trilafon. (Tr. 593.) His next visit occurred on November 18, 2009 and Nielson complained of racing thoughts and paranoia. (Tr. 592.) Ms. Horn continued Nielson's Seroquel and added Zoloft, Abilify, and Xanax. (Tr. 592.)

Nielson visited Ms. Horn three times in December 2009. (Tr. 590-591, 775.) On December 1, 2009, Nielson reported that his anxiety had greatly improved since his last visit and he was feeling better on his current medications. (Tr. 591.) On December 9, 2009, Nielson complained of recent stressors, paranoia, poor sleep, and suicidal thoughts, but no suicide plan. (Tr. 590.) Horn discontinued Nielson's Zoloft, Trilafon, and Seroquel, prescribed Symbyax and Zypresxa, and continued his Xanax prescription. (Tr. 590.) On December 22, 2009, Nielson denied any changes since the last visit and Horn determined that Nielson had uncontrolled

---

[3] Global Assessment Functioning score is a "clinician's judgment of the individual's overall level of functioning. Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed. Text Rev. 2000) ("DSM-IV-TR").

hypertension, insomnia, anxiety disorder, and panic disorder. (Tr. 775.) At his visits in January and February 2010, Nielson reported good results with his current medication, improved sleep, and decreased anxiety. (Tr. 773-774.) Although Ms. Horn indicates that she treated Nielson on March 23, 2010 and April 20, 2010, there are no treatment records from those dates in the administrative record.

On April 28, 2010, Ms. Horn completed a Mental Residual Functional Capacity Questionnaire regarding Nielson. (Tr. 778-782.) Horn opined that Nielson had social anxiety disorder and that he had a consistent GAF of 55 over the previous year. (Tr. 778.) She noted that Nielson had not complained about any side effects from any of his medication. (Tr. 778.) When asked to describe her clinical findings that demonstrate the severity of Nielson's impairment and symptoms, Horn responded with Nielson's complaints about panic attacks, avoiding places with lots of people, and not going out to social functions. (Tr. 778.) Next, Horn indicated on a checklist that Nielson would be unable to meet competitive standards for most of the standards listed including: (1) carrying out short and simple instructions, (2) maintaining regular attendance and being punctual, (3) sustaining an ordinary routine without special supervision, (4) making simple work related decisions, (5) completing a normal workday and workweek without interruptions from psychologically based symptoms, (6) performing at a consistent pace without an unreasonable number and length of rest periods, (7) asking simple questions or requesting assistance, (8) accepting instructions and responding appropriately to criticism from supervisors, (9) responding appropriately to changes in a routine work setting, (10) dealing with normal work stress, (11) understanding, remembering, and carrying out detailed instructions, (12) setting realistic goals or making plans independently of others, and (13) adhering to basic standards of neatness and cleanliness. (Tr. 780-781.)

Ms. Horn further indicated that Nielson had no useful ability to function regarding (1) working in coordination with or proximity to others without being unduly distracted, (2) getting along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes, (3) being aware of normal hazards and taking appropriate precautions, (4) dealing with stress of semi-skilled or skilled work, (5) interacting appropriately with the general public, (6) maintaining socially appropriate behavior, (7) traveling to an unfamiliar place, and (8) using public transportation. (Tr. 780-781.) Ms. Horn also indicated that Nielson was seriously limited but not precluded from remembering work-like procedures and understanding and remembering very short and simple instructions. (Tr. 780.) Finally, she indicated that he was limited but could satisfactorily carry out very short and simple instructions. (Tr. 780.)

The ALJ did not find Nielson had a severe mental impairment and the Court agrees that the ALJ's determination is supported by substantial evidence on the record as a whole, including the additional information submitted to the Appeals Council. First, Ms. Horn is not an acceptable medical source who can provide evidence to establish the existence of a medically determinable impairment.

> Social Security separates information sources into two main groups: *acceptable medical sources* and *other sources*. It then divides *other sources* into two groups: *medical sources* and *non-medical sources.* 20 C.F.R. §§ 404.1502, 416.902 . *Acceptable medical sources* include licensed physicians (medical or osteopathic doctors) and licensed or certified psychologists. 20 C.F.R. §§ 404.1513(a), 416.913(a).

*Sloan v. Astrue*, 499 F.3d 883, 888 (8th Cir. 2007) (emphasis in original). According to Social Security regulations only acceptable medical sources can provide evidence to establish the existence of a medically determinable impairment. 20 C.F.R. §§ 404.1513(a), 416.913(a). Only acceptable medical sources can provide medical opinions. 20 C.F.R. §§ 404.1527(a)(2),

416.927(a)(2). Medical sources include "nurse practitioners, physician assistants, naturopaths, chiropractors, audiologists, and therapists." 20 C.F.R. §§ 404.1513(d)(1), 416.913(d)(1). "Information from these other sources cannot establish the existence of a medically determinable impairment. Instead, there must be evidence from an 'acceptable medical source' for this purpose." SSR 06-03P, 2006 WL 2329939. "[I]nformation from such other sources, [however], may be based on special knowledge of the individual and may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function. *Id.*; 20 C.F.R. § 404.1513(d). "The case record should reflect the consideration of opinions from medical sources who are not acceptable medical sources . . .who have seen the claimant in their professional capacity." SSR 06-03p. Because Ms. Horn is not an acceptable medical source, her opinion regarding his limitations cannot constitute substantial evidence or establish the existence of a medically determinable impairment.

Next, Ms. Horn's opinion also fails to provide any insight into the severity of any alleged mental impairment, because her opinion is completely unsupported by her treatment records and other medical evidence in the record. There is no evidence to support the substantial restrictions Ms. Horn indicates in the RFC Questionnaire. For example, she indicates that Nielson was unable to adhere to basic standards of neatness and cleanliness, when the only treatment note addressing such standards noted that, "He is dressed in clothing that appears appropriate for the season and appears clean and well groomed with no body odors. Clothing is well fitted" (Tr. 595.) Ms. Horn also assigned Nielson a GAF score of 55, which would indicate moderate symptoms or moderate difficulty in social, occupational, or school functioning. DSM-IV-TR at 34. The total disability determination with substantially severe restrictions of mental function in the RFC Questionnaire is inconsistent with a GAF score of 55, which indicates only moderate

symptoms. Moreover, none of Ms. Horn's treatment records contain objective clinical findings regarding any of the categories on the RFC Questionnaire. Her treatment notes consist solely of describing Nielson's complaints, naming a diagnosis, and noting any changes to his medication. (Tr. 590-597, 773-775.) The most recent treatment notes also indicated that Nielson reported doing well with his medications. (Tr. 773-774.) "If an impairment can be controlled by treatment or medication, it cannot be considered disabling." *Wildman v. Astrue*, 596 F.3d 959, 965 (8th Cir. 2010). There is no explanation in the medical record to show how Nielson was reportedly doing well in February 2010 and then two months later he was unable to perform any work due to total mental disability.

Nielson's activities of daily living demonstrate that he is able to perform household chores, such as laundry, and care for his three year old grandchild. (Tr. 45, 207.) Nielson has not alleged or suffered any job loss due to a mental impairment. Nielson has not been hospitalized for a mental impairment or attempted suicide.

Finally, Nielson contends that the ALJ should have further developed the record regarding Nielson's mental impairment rather than finding them nonsevere, because there was no evidence from a treating physician or an examining physician addressing Nielson's mental impairments. The ALJ has a duty to fully develop the record. *Smith v. Barnhart*, 435 F.3d 926, 930 (8th Cir. 2006) (citation omitted). In some cases, this duty requires the ALJ to obtain additional medical evidence, such as a consultative examination of the claimant, before rendering a decision. *See* 20 C.F.R. § 404.1519a(b). "The ALJ is required to order medical examinations and tests only if the medical records presented to him do not give sufficient medical evidence to determine whether the claimant is disabled." *McCoy v. Astrue*, 648 F.3d 605, 612 (8th Cir. 2011). Therefore, "[a]n ALJ is permitted to issue a decision without obtaining additional

11

medical evidence so long as other evidence in the record provides a sufficient basis for the ALJ's decision." *Anderson v. Shalala*, 51 F.3d 777, 779 (8th Cir. 1995).

"[T]he ALJ is under no duty to provide continuing medical treatment for the claimant." *Baldwin v. Barnhart*, 349 F.3d 549, 558 (8th Cir. 2003). It is the claimant's burden to establish that his impairment or combination of impairments are severe. *Kirby*, 500 F.3d at 707. "Severity is not a toothless standard, and the Eight Circuit has upheld on numerous occasions the Commissioner's finding that a claimant failed to make this showing." *Waters v. Astrue*, No. 1:07-CV-100 LMB, 2008 WL 4280037 at *12 (E.D. Mo. Sept. 10, 2008) (internal quotations omitted). In this case, the ALJ held the record open for thirty days for Nielson to submit additional evidence. In that submission, Nielson presented the treatment notes and RFC Questionnaire from Ms. Horn. As outlined above, there is sufficient information to support the ALJ's conclusion that Nielson's mental impairments were not severe. Nielson had the burden to show that his depression and anxiety were severe impairments. Therefore, the adverse determination was a failure to carry that burden rather than a failure to develop the record. *See Eichelberger v. Barnhart*, 390 F.3d 584, 592 (8th Cir. 2004) (no issue remained undeveloped, claimant simply failed to carry burden to show that she was unable to perform her past work).

**B.     RFC Assessment**

Nielson states that the ALJ's RFC determination did not account for his anxiety and depression, failed to include sufficient limitation of his severe impairments or the combination of impairments and ignored the findings of the functional capacity evaluation completed by ProRehab. RFC is defined as what the claimant can do despite his or her limitations, and includes an assessment of physical abilities and mental impairments. 20 C.F.R. § 404.1545. The RFC is a function-by-function assessment of an individual's ability to do work related activities

on a regular and continuing basis.[1]  SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996).  It is the ALJ's responsibility to determine the claimant's RFC based on all relevant evidence, including medical records, observations of treating physicians and the claimant's own descriptions of his limitations.  *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001).  Although the ALJ bears the primary responsibility for assessing a claimant's RFC based on all relevant evidence, a claimant's RFC is a medical question.  *Hutsell v. Massanari*, 259 F.3d 707, 711 (8th Cir. 2001) (citing *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001)).  Therefore, an ALJ is required to consider at least some supporting evidence from a medical professional.  *See Lauer*, 245 F.3d at 704 (some medical evidence must support the determination of the claimant's RFC).  An RFC determination made by an ALJ will be upheld if it is supported by substantial evidence in the record.  *See Cox v. Barnhart*, 471 F.3d 902, 907 (8th Cir. 2006).

The ALJ determined that Nielson had the residual functional capacity to perform light work, except he can only occasionally engage in all postural activities, can never reach overhead with his dominant right arm, and must avoid concentrated exposure to cold and heat, moving machinery, hazards, and unprotected heights.  (Tr. 14.)  "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds."  20 C.F.R. §§ 404.1567(b), 416.967(b).

1. **Limitations for Nielson's Depression and Anxiety**

First, the Court finds that the ALJ was not required to include limitations for Nielson's depression and anxiety, as the ALJ properly found that they were not severe impairments.  *See Lacroix v. Barnhart*, 465 F.3d 881, 888 (8th Cir. 2006) (ALJ had no obligation to include in the RFC mentally based limitations where the ALJ did not find the opinions by the medical sources

---

[1] A "regular and continuing basis" means 8 hours a day, for 5 days a week, or an equivalent work schedule.  SSR 96-8p, 1996 WL 374184, at *1.

13

to be supported by the evidence or entitled to enhanced weight). As discussed above, there was no medical evidence from an acceptable medical source that would demonstrate more than mild impairments caused by Nielson's depression and anxiety. Therefore, the ALJ was not required to include mental based limitations in the determination of Nielson's RFC.

## 2. Consideration of Severe Impairments in RFC Determination

Second, the Court finds that ALJ properly included limitations regarding Nielson's severe impairments in the RFC and the combined effects of those severe impairments. "[T]he ALJ must consider the effects of the combination of both physical and mental impairments to determine whether the combination of impairments is medically equal to any listed impairment." *Raney v. Barnhart*, 396 F.3d 1007, 1011 (8th Cir. 2005.) "The ALJ [adequately] summarized Nielson's medical records and separately discussed each of [Nielson's] alleged impairments. *Martise v. Astrue*, 641 F.3d 909, 924 (8th Cir. 2011). The limitations in the RFC specifically included physical limitations accounting for discogenic and degenerative disorders of the back and neck, ulnar neuropathy (limitations on postural activities and overreaching), COPD, and hypertension (limitation on cold and heat exposure, moving machinery, and unprotected heights). "The ALJ found no evidence that the combined clinical findings from these impairments reached listing level severity." *Raney*, 396 F.3d at 1011, (Tr. 14.) The ALJ specifically found that Nielson did not have an impairment or combination of impairments that met or medically equaled any of the listed impairments. (Tr. 14.) 'Based on the ALJ's synopsis of [Neilson's] medical records and discussion of each of [Nielson's] alleged impairments, [the Court] concludes that the ALJ properly considered the combined effects of [his] impairments. *Martise*, 641 F.3d at 924. *See also Hajeck v. Shalala*, 30 F.3d 89, 92 (8th Cir. 1994) (ALJ's decision affirmed where ALJ found claimant had a history of several severe impairments, but did not have an impairment or

14

combination of impairments that would constitute a disability); *Browning v. Sullivan*, 958 F.3d 817, 821 (8th Cir. 1992) (ALJ's decision affirmed where ALJ separately discussed claimant's mental disorder, physical impairments, complaints of pain, and daily activities and "to require a more elaborate articulation of the ALJ's thought processes would not be reasonable.")

### 3. Functional Capacity Assessment

Finally, the Court finds that the ALJ considered the Functional Capacity Evaluation ("FCE"). On June 26, 2008, Dr. Michael Chabot, Nielson's treating physician and an orthopedic spine specialist, requested a FCE for Nielson. (Tr. 416.) The FCE was conducted by registered and licensed occupational therapist Dean Schimanold on July 8, 2008. (Tr. 427-439.) Mr. Schimanold noted that the "client failed a number of validity criteria this date that reflect inconsistencies between his subjective reports and displayed function" and "the presence of symptom magnification behaviors and self-limiting effort has made it difficult for this therapist to accurately identify the client's true work capacity at this time." (Tr. 427.) After reviewing the FCE, examining Nielson, and reviewing previous CT scans and X-rays, Dr. Chabot determined that Nielson had reached maximum medical improvement and could return to work with a weight limit of 35 to 40 pounds with limited squatting. (Tr. 414.) On September 18, 2008, Dr. Chabot further limited Nielson to avoiding crawling and repetitive overhead activity. (Tr. 411.) The ALJ relied upon Dr. Chabot's determination when discussing Nielson's musculoskeletal pain and noted that Dr. Chabot had allowed him to return to work with a lifting limit of 35-40 pounds. (Tr. 15.)

First, the ALJ does not have to cite all of the evidence in the record. "Although required to develop the record fully and fairly, an ALJ is not required to discuss every piece of evidence submitted." *Wildman*, 596 F.3d at 966 (quoting *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir.

1998)). "Moreover, an ALJ's failure to cite specific evidence does not indicate that such evidence was not considered." *Id.* (highly unlikely that ALJ did not consider and reject physician's opinion when ALJ made specific references to other findings set forth in physician's notes). Second, Nielson fails to identify what findings in the FCE the ALJ "ignored." Third, the FCE detracts from rather than supports Nielson's claim for total disability. Mr. Shimanold specifically noted that he believed Nielson was magnifying his symptoms and he was unable to determine Nielson's true work capacity. (Tr. 427.) The Court finds that substantial evidence on the record as a whole supports the ALJ's RFC determination.

## V.     Conclusion

Based on the foregoing, the Court finds that the ALJ's decision was based on substantial evidence in the record as a whole.

Accordingly,

**IT IS HEREBY ORDERED** that the relief requested in Nielson's Complaint and Brief in Support of Complaint is **DENIED**. [Doc. 1, 13].

A separate judgment will be entered this date in favor of the Defendant. [Doc. 14]

Dated this 16th day of April, 2013

>   /s/ Nannette A. Baker
>   NANNETTE A. BAKER
>   UNITED STATES MAGISTRATE JUDGE